## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KANSAS NATURAL RESOURCE COALITION, | |
| Plaintiff, | CIVIL ACTION |
| v. | CASE NO. _____ |
| U.S. DEPARTMENT OF INTERIOR; RYAN ZINKE, in his official capacity as Secretary of Interior; U.S. FISH AND WILDLIFE SERVICE; and GREG SHEEHAN, in his official capacity as Principal Deputy Director of the U.S. Fish and Wildlife Service, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.     To restore democratic accountability to the federal bureaucracy, Congress enacted the Congressional Review Act in 1996, requiring federal agencies to submit every new rule they adopt to Congress before the rule goes into effect. This gives our elected representatives an opportunity to consider the rule's merits and, in the rare case that they disagree with the agency, to disallow the rule.

2.     Agency compliance with the Congressional Review Act's submission requirement has been spotty, a problem that the Congressional Research Service, Government Accountability Office, House Judiciary Committee, and Chairman of the Senate Subcommittee on Regulatory Affairs have warned agencies about.

3.      Enforcing a rule that has not been submitted to Congress, as required, robs our elected representatives of an opportunity to consider its merits. But agency non-compliance has another, less obvious consequence: According to the statute, a rule—even a popular, beneficial, and non-controversial rule—cannot be given legal effect until it has been submitted. Thus, when an agency treats a good, but unsubmitted, rule as if it were lawfully in effect, it forces people to rely on the rule despite this legal infirmity, creating unnecessary legal risk and undermining the rule's benefits.

4.      Kansas Natural Resource Coalition (KNRC) is an organization of county governments in western Kansas that promotes local government participation in federal and state policy on conservation and natural resource issues. Of particular importance to KNRC is the U.S. Fish and Wildlife Service's Policy for Evaluating Conservation Efforts When Making Listing Decisions (PECE Rule), which is critical to the agency's implementation of the Endangered Species Act. The PECE Rule provides the framework for encouraging states, local governments, conservationists, and property owners to work collaboratively on species conservation efforts, rewarding those efforts by allowing them to avoid the need to list a species under the Endangered Species Act.

5.      The PECE Rule has been particularly important to the conservation of the lesser prairie chicken. In 2013, KNRC developed a conservation plan for the species, which its 32 member counties adopted. KNRC's conservation plan relies on the PECE Rule to provide a key incentive for counties and property owners to

participate. Unfortunately, the Service has not submitted the rule to Congress as required by the Congressional Review Act. Although, it is extremely unlikely that Congress would disapprove of this important and beneficial rule, the Congressional Review Act nonetheless forbids the rule from being given lawful effect until it is submitted. Therefore, the Service's failure to submit the PECE Rule undermines collaborative conservation efforts that depend on the rule, including those led by KNRC and its member counties.

6.     Submission of the rule to Congress is agency action unlawfully withheld or unreasonably delayed. KNRC seeks a declaration that the Service has violated the Congressional Review Act and Administrative Procedure Act, and an injunction requiring the agency to submit the PECE Rule to Congress so that it may lawfully go into effect and be relied upon.

<h2 style="text-align:center">JURISDICTION AND VENUE</h2>

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); § 2201 (authorizing declaratory relief); § 2202 (authorizing injunctive relief); and 5 U.S.C. § 702 (providing for judicial review of agency actions unlawfully withheld or unreasonably delayed).

8.     Venue in this district is predicated upon 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1). A majority of the lesser prairie chicken's prime habitat is located in western Kansas and the conservation efforts contemplated in KNRC's plan and encouraged by the PECE Rule will occur there.

## PARTIES

*Plaintiff*

9.     Kansas Natural Resource Coalition is a collaboration of Boards of County Commissioners from western Kansas and Wichita. KNRC promotes local government participation in federal and state policy on conservation and natural resource issues. Member county governments fund the organization, and those counties' commissioners govern it. KNRC believes that local government is in the best position to study, manage, and conserve natural resources, while also respecting private property rights, economic impacts, and other fundamental concerns. It advocates counties taking a greater role in managing natural resources and exercising an appropriate influence on federal environmental decision-making. KNRC has developed a plan for counties to study and conserve the lesser prairie chicken, which its member counties have adopted. But the ability for KNRC and its member counties to implement that plan depends on counties and property owners being able to rely on the PECE Rule.

*Defendants*

10.     The Department of Interior is an agency of the United States. Congress has charged the Department with administering the Endangered Species Act for nonmarine species.

11.     Ryan Zinke is Secretary of the Department of Interior. He oversees the Department's administration of the Endangered Species Act and is sued in his official capacity only.

4

12.     The United States Fish and Wildlife Service is an agency of the Department of Interior. The Service has been delegated responsibility by the Secretary of the Department of Interior for the day-to-day administration of the Endangered Species Act, including the listing of threatened and endangered nonmarine species.

13.     Greg Sheehan is the Principal Deputy Director and Acting Director of the United States Fish and Wildlife Service. He oversees the Service's administration of the Endangered Species Act and is sued in his official capacity only.

## LEGAL FRAMEWORK

### The Congressional Review Act

14.     The Senate and House sponsors of the Congressional Review Act filed identical statements in the records of both Houses of Congress explaining the purpose of the statute. *See* 142 Cong. Rec. S3683 (Apr. 18, 1996) (joint statement of Sens. Nickles, Reid, and Stevens); 142 Cong. Rec. 6922-6926 (1996) (statement of Rep. Henry Hyde for the House sponsors and committees of jurisdiction).[1] As that statement explains, the Congressional Review Act was enacted in recognition that excessive delegation had upset the "delicate balance between the appropriate roles of the Congress in enacting laws, and the Executive Branch in implementing those laws. This legislation will help to redress the balance, reclaiming for Congress some of its

---

[1] The House and Senate sponsors' statements are identical except for a brief introductory remark in each.

policymaking authority, without at the same time requiring Congress to become a super regulatory agency." 142 Cong. Rec. at S3683.

15.    By reclaiming that authority, Congress was restoring democratic accountability to the rulemaking process. "Rules can be surprisingly different from the expectations of Congress or the public. Congressional review gives the public the opportunity to call the attention of politically accountable, elected officials to concerns about new agency rules. If these concerns are sufficiently serious, Congress can stop the rule." *Id.* at S3684.

16.    To effect these purposed, the Congressional Review Act requires agencies to submit every new rule to Congress for review before it can go into effect. The Congressional Review Act provides: "*Before a rule can take effect*, the Federal agency promulgating such rule *shall submit* to each House of the Congress and to the Comptroller General a report containing—(i) a copy of the rule; (ii) a concise general statement relating to the rule, including whether it is a major rule; and (iii) the proposed effective date of the rule." 5 U.S.C. § 801(a)(1)(A) (emphasis added). The failure to submit good rules puts those who rely on them in a catch-22: they must rely on the rules but do so at their peril or subject to substantial legal uncertainty and risk.

17.    The submission of a rule gives Congress an opportunity to review and either (1) do nothing, in which case the rule goes into effect; or (2) disapprove the rule through a joint resolution. When an agency fails to submit a rule, it wrongfully denies our elected representatives this opportunity, which the Congressional Review Act

punishes by preventing the rule—even a popular rule that Congress would undoubtedly approve—from being lawfully in effect.

18. The Congressional Review Act defines "rule" broadly to ensure democratic oversight over much of what administrative agencies do. A rule is "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4); 5 U.S.C. § 804(3)(C). It has narrow exceptions for rules "of particular applicability," "relating to agency management or personnel," and "of agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties." 5 U.S.C. § 804(3)(C).

19. Despite the Congressional Review Act's clear mandate that agencies must submit every new rule to Congress, and the clear consequences for failing to do so, agency compliance has been lacking. Ten years after the statute was enacted, the Government Accountability Office studied its impact, finding that agency compliance "was inconsistent" but appeared to be improving.[2] In 2009, a Congressional Research Service report found that agencies had failed to submit more than 1,000 substantive

---

[2] J. Christopher Mihm, Government Accountability Office, Testimony Before the Subcommittee on Commercial and Administrative Law, Committee on the Judiciary, House of Representatives, *Federal Rulemaking: Perspectives on 10 Years of Congressional Review Act Implementation* (Mar. 30, 2006), *available at* https://www.gao.gov/assets/120/113245.pdf.

final rules adopted between 1999 and 2009.[3] More recent studies have reached similar conclusions.[4] Recognizing the scope and severe consequences of noncompliance, the House Judiciary Committee held a hearing on September 28, 2016 to study the problem.[5] More recently, the Chairman of the Senate Subcommittee on Regulatory Affairs sent a letter to the Office of Management and Budget expressing concern about the consequences of widespread agency noncompliance.[6]

**The Endangered Species Act**

20.    The Endangered Species Act provides for the listing of endangered and threatened species and imposes federal regulations to address threats to those species. 16 U.S.C. § 1531, *et seq.* Endangered species are currently in danger of extinction throughout all or a significant portion of their range; threatened species

---

[3]  *See* Curtis W. Copeland, Congressional Research Service, Congressional Review Act: Rules Not Submitted to GAO and Congress (Dec. 29, 2009), *available at* https://www.redtaperollback.com/wp-content/uploads/2017/04/CRS122909.pdf.

[4]  *See* Philip A. Wallach & Nicholas W. Zeppos, Brookings Institute Report, *How powerful is the Congressional Review Act?* (Apr. 4, 2017), *available at* https://www.brookings.edu/research/how-powerful-is-the-congressional-review-act/ (finding that, among major substantive rules alone, 348 rules were not submitted).

[5]  The Judiciary Committee's link to a video of the hearing, "Rulemakers Must Follow the Rules, Too: Oversight of Agency Compliance with the Congressional Review Act," and the witnesses' written testimony is available at https://judiciary.house.gov/hearing/rulemakers-must-follow-rules-oversight-agency-compliance-congressional-review-act/.

[6]  Letter from Senator James Lankford to Director Mick Mulvaney Regarding the Congressional Review Act, https://pacificlegal.org/wp-content/uploads/2018/04/2017-12-05-Sen-Lankford-to-Director-Mulvaney-re-CRA-Guidance-Documents.pdf.

are likely to become endangered within the foreseeable future. 16 U.S.C. § 1532(6), (20).

21.     To determine whether a species merits listing, the Fish and Wildlife Service must consider five factors: (1) the present or threatened destruction, modification, or curtailment of its habitat or range; (2) overutilization for commercial, recreational, scientific, or educational purposes; (3) disease or predation; (4) the inadequacy of existing regulatory mechanisms; or (5) other natural or manmade factors affecting its continued existence. 16 U.S.C. § 1533(a).

22.     Several significant federal regulatory burdens follow from a species' listing: "Take" of listed species is forbidden, which is a broad prohibition of any activity that harms a species, even ordinary land use activities. Critical habitat is designated, triggering scrutiny of any use of the designated land that requires federal involvement, including financing and permitting. And federal agencies must proactively protect species, including by consulting with the Service to ensure that any activities they carry out will not jeopardize the species.

23.     Although the Endangered Species Act establishes several federal regulatory mechanisms to protect species, it acknowledges that "encouraging the States and other interested parties . . . to develop and maintain conservation programs . . . is a key . . . to better safeguarding, for the benefit of all citizens, the Nation's heritage in fish, wildlife, and plants." 16 U.S.C. § 1531(a)(5).

## BACKGROUND

## The PECE Rule

24.     In 2003, the Service developed the PECE Rule to encourage states and private parties to develop more effective, collaborative conservation plans in lieu of the agency listing species under the Endangered Species Act. 68 Fed. Reg. 15,100, 15,102 (Mar. 28, 2003). "Early conservation helps preserve management options, minimizes the cost of reducing threats to a species, and reduces the potential for land use restrictions in the future." 68 Fed. Reg. at 15,103. "Addressing the needs of species before the regulatory protections associated with listing under the Act come into play often allows greater management flexibility in the actions necessary to stabilize or restore these species and their habitats." *Id*.

25.     In finalizing the PECE Rule, the Service acknowledged that one of its chief purposes was to "provide[] information to the groups interested in developing agreements or plans that would contribute to making it unnecessary for the Services to list a species under the Act." 68 Fed. Reg. at 15,101. Providing certainty to those groups is essential to encouraging effective, voluntary conservation efforts. 68 Fed. Reg. at 15,104 ("It is our intention and belief that the PECE criteria will actually increase the voluntary participation in conservation agreements by increasing the likelihood that parties' voluntary efforts and commitments . . . will play a role in a listing decision.").

26.     The PECE Rule establishes two criteria for evaluating state and private conservation plans: (1) The certainty that the conservation efforts will be

implemented and (2) the certainty that the efforts will be effective. 68 Fed. Reg. at 15,101. The rule provides further guidance about the factors that inform both considerations.

27.     Providing certainty to the groups undertaking these conservation efforts is essential because, as the Service's Federal Register notice acknowledged, preparing a conservation plan requires the commitment of vast resources to the effort. 68 Fed. Reg. at 15,101 (estimating "an average of 2,500 person-hours to complete a conservation agreement").

28.     The PECE Rule does not appear in either the Government Accountability Office's database of rules submitted under the Congressional Review Act nor in Congress' database of executive communications. Any submitted rule would appear in both. Thus, the PECE Rule was not submitted to Congress as required by the Congressional Review Act.

29.     Despite failing to submit the PECE Rule to Congress, the Fish and Wildlife Service has treated it as in effect. Relying on the rule, states, local governments, property owners, and conservationists have expended substantial resources to develop conservation plans for the lesser prairie chicken, dunes sagebrush lizard, gopher tortoise, and many other species.

30.     Despite the significant resources invested in conservation in reliance on the PECE Rule, the Service has failed to comply with its mandatory duty to submit the rule so that it can lawfully be in effect and conservation participants can truly rely on it. This puts participants in a bind: they must show that their plans are certain

to be implemented and effective but the failure to submit the PECE Rule undermines the incentives necessary to achieve that certainty.

**The PECE Rule's Role in Promoting Lesser Prairie Chicken Conservation**

31.     The lesser prairie chicken is a small species of grouse found in Kansas, Colorado, Oklahoma, Texas, and New Mexico. In 2012, the Service proposed to list the species as threatened under the Endangered Species Act.

32.     Because a listing would entail severe regulatory restrictions disruptive to the affected states' economies, states, property owners, and conservation groups worked with the Western Association of Fish and Wildlife Agencies to develop and implement a range-wide conservation plan for the species. They did so relying on the PECE Rule, hoping that their effort would succeed in avoiding the need to list the species.

33.     The range-wide plan steers substantial resources to studying the lesser prairie chicken and protecting it. It also coordinates voluntary conservation efforts across all five states, with the goal of minimizing and mitigating impacts to habitat while raising funds to acquire, permanently protect, and improve habitat for the species. Those efforts are paying off. In the five years since the plan was developed, the species' population has nearly doubled, from a low of 19,000 in 2013 to more than 33,000 in 2017. *See* Lyman McDonald, et al., Western Association of Fish and Wildlife

Agencies, *Range-Wide Population Size of the Lesser Prairie-Chicken 2012 to 2017* (Sept. 5, 2017).[7]

34.    Despite this conservation effort, the Service decided to list the species in 2014. 79 Fed. Reg. 19,974 (Apr. 10, 2014).

35.    Participants in the conservation plan challenged that listing as violating the PECE Rule. They argued that the Service had assumed—irrationally and contrary to the PECE Rule—that the conservation plan would not be implemented if the species were not listed. KNRC participated in that litigation as amicus, arguing that the Service's violation of the PECE threatened its conservation efforts. *See* Mot. of KNRC for Leave to File Amicus Brief, *Permian Basin Petroleum Assoc. v. Dept. of Interior*, Case No. 14-cv-00050, Doc. No. 65 (W.D. Tex. filed May 6, 2015).

36.    On September 1, 2015, the District Court for the Western District of Texas struck down the listing decision for violating the PECE Rule. *Permian Basin Petroleum Association v. Department of Interior*, 127 F. Supp. 3d 700 (W.D. Tex. 2015). The Court explained that the Service's unexplained assumption that conservation efforts would be abandoned if the species were not listed conflicted with the PECE Rule and reflected an unexplained and irrational change of position.

37.    Because of that decision, the Service withdrew the listing of the lesser prairie chicken. 81 Fed. Reg. 47,047 (July 20, 2016). Since then, the voluntary conservation efforts prompted by the PECE Rule have continued.

---

[7]    http://lpcinitiative.org/wp-content/uploads/LEPCAerialSurvey2017Report. pdf.

38.    However, petitions to relist the species were subsequently filed and the Service is currently reviewing them. 81 Fed. Reg. 86,315 (Nov. 30, 2016). As the prior listing decision and related litigation show, the PECE Rule will play a critical role in resolving those petitions and encouraging conservation of the species.

### KNRC's Efforts to Assist Counties in Studying and Conserving the Lesser Prairie Chicken

39.    Recognizing the impact a decision to list the lesser prairie chicken would have on the ability of Kansas and its counties to effectively manage natural resources, KNRC developed a Lesser Prairie Chicken Conservation, Management and Study Plan in 2013, which all of its member counties adopted.[8] A year later, that plan garnered the attention of the Congressional Working Group on the Endangered Species Act.[9] KNRC's efforts are particularly important to conserving the lesser prairie chicken because the majority of the species' population and quality habitat are in Kansas.

40.    KNRC's conservation plan provides the "framework, policies and technical needs to maintain current and enhance future conservation of the Lesser Prairie Chicken" in Kansas. "It provides the mechanism, process, and context through which meaningful conservation efforts may be identified, assessed, encouraged, or even codified within individual Counties." The plan acknowledges "positive

---

[8]  *Available at* https://knrc.org/Files/LPC/LPC_CONSERVATION_PLAN_REVISED_FINAL_101413-1.pdf.

[9]  *See* Endangered Species Act Congressional Working Group, Report, Findings and Recommendations 46 (Feb. 4, 2014), https://valadao.house.gov/uploadedfiles/esaworkinggroupreportandrecommendations.pdf.

engagement of local governments and private landholders is necessary for any conservation program to be effective." Consequently, the plan proposes county-level options for "immediate, on-the-ground conservation actions, suggests collaborative, peer-review of the existing body of scientific data, and outlines meaningful study actions to address scientific data gaps."

41.     The plan calls for counties to develop and implement policies to control invasive species that encroach on lesser prairie chicken habitat, to promote sustainable grazing, to better mark fences to prevent entanglement or injury, and to encourage habitat restoration. Recognizing that the plan will be most effective if it adapts with the 5-state range-wide plan discussed above, KNRC's plan also calls on counties to ensure compatibility with that larger plan.

42.     Under the PECE Rule, the Service must consider KNRC's plan, along with the broader range-wide plan, in determining whether the lesser prairie chicken should be listed. However, to provide the certainty that the conservation efforts called for in the plan will be implemented, participating counties and property owners must have confidence that the PECE Rule is lawfully in effect.

43.     The Service's unlawful failure to submit the rule to Congress as required by the Congressional Review Act harms KNRC, its member counties, and participating property owners by putting them in a catch-22: the PECE Rule demands that KNRC prove that its conservation plan is certain to be implemented and effective. But the failure to submit the PECE Rule, and thus the inability to rely on

it, undermines the incentives for counties and property owners to participate in KNRC's plan reducing the certainty that it will be implemented and effective.

## DECLARATORY AND INJUNCTIVE RELIEF IS APPROPRIATE

44.     All preceding paragraphs are realleged and incorporated herein by reference.

45.     An actual and substantial controversy exists between KNRC and the Service over its failure to submit the PECE Rule to Congress as required by the Congressional Review Act.

46.     This case is justiciable because the failure to submit the rule is agency action unlawfully withheld or unreasonably delayed, which has caused and will continue to cause immediate and concrete injury to KNRC. The Service's treatment of the PECE Rule as lawfully in effect despite failing to submit it to Congress forces KNRC, its member counties, and property owners participating in the conservation effort to rely on the rule. The Service's failure to comply with a clear mandatory duty, however, creates substantial regulatory uncertainty and litigation risk, which in turn undermines KNRC's conservation plan.

47.     If the Department's failure to comply with the Congressional Review Act is not declared unlawful and an injunction issued requiring the rule's submission, KNRC will continue to be irreparably harmed, especially as the Service once again considers listing the lesser prairie chicken.

48.     KNRC has no other plain, speedy, and adequate remedy at law.

49.     KNRC's action is ripe and timely.

50.     Therefore, declaratory and injunctive relief is appropriate to resolve this controversy.

## CLAIM FOR RELIEF

### Agency Action Unlawfully Withheld or Unreasonably Delayed
### (5 U.S.C. § 706)

51.     The PECE Rule is a "rule" for purposes of the Congressional Review Act. 5 U.S.C. § 551(4).

52.     The PECE Rule was not submitted to Congress as required by the Congressional Review Act. *See* 5 U.S.C. § 801(a)(1)(A). It is extremely unlikely Congress would disapprove of this important and beneficial rule, but it must nonetheless submitted so that it may go into effect.

53.     Submission under the Congressional Review Act is "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706.

54.     Therefore, the Service must submit the PECE Rule to Congress so that the rule may go into effect and states, counties, property owners, and conservationists can rely on it as they undertake conservation efforts.

## PRAYER FOR RELIEF

Plaintiffs seek judgment against Defendants as follows:

1.      For a declaration that submission of the rule under the Congressional Review Act is agency action unlawfully withheld or unreasonably delayed;

2.      For a declaration that Defendants must submit the rule to Congress without delay;

3.      For an injunction requiring Defendants to submit the rule to Congress

under the Congressional Review Act;

4.      For an award of KNRC's cost of litigation, including, but not limited to,

reasonable attorney's fees and expert witness fees, and fees and costs pursuant to 28

U.S.C. § 2412, or other applicable authority; and

5.      For such other relief as the Court may deem just and proper.

        DATED: April 11, 2018.                    Respectfully submitted,

                                                 s/ Kenny Estes
*JONATHAN WOOD, DC Bar 1045015       KENNY ESTES
*TODD F. GAZIANO, Tex. Bar 07742200   Kansas Bar No. 24226
Pacific Legal Foundation              Attorney for Plaintiff Kansas Natural
3033 Wilson Blvd., Suite 700            Resource Coalition
Arlington, Virginia 22201            304 North Main Street
Telephone: (202) 888-6881            P.O. Box 324
Facsimile: (916) 419-7747            Lakin, Kansas 67860
E-mail: jwood@pacificlegal.org       Telephone: (620) 355-7547
E-mail: tgaziano@pacificlegal.org    Email: keinkeco@gmail.com


*JEFFREY W. McCOY, Cal. Bar 317377
*CALEB R. TROTTER, Cal. Bar 305195
*KAYCEE M. ROYER, Cal. Bar 317397
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
E-mail: jmccoy@pacificlegal.org
E-mail: ctrotter@pacificlegal.org
E-mail: kroyer@pacificlegal.org

*Pro Hac Vice Pending

        Attorneys for Plaintiff Kansas Natural Resource Coalition